# EXHIBIT B

IN THE CIRCUIT COURT OF THE 15TH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

MARY PATRICIA RYAN, as an
individual and on behalf of all others
similarly situated,

CASE NO.: 50-2010-CA-005992XXXXMB AO
CIVIL DIVISION

         Plaintiff,

vs.

MORSE OPERATIONS, INC., a
Florida corporation, d/b/a ED MORSE
DELRAY TOYOTA,

Allan Pyke
Certified Process Server ID#82
Second Judicial Circuit Florida
Date: 7/6/10       Time: 1:00 ₽

         Defendant.
_____/

## SUMMONS

THE STATE OF FLORIDA:
To Each Sheriff of the State:

      YOU ARE COMMANDED to serve this summons and a copy of the complaint, or
petition in this action on the Defendant,

      MORSE OPERATIONS, INC.
      By Serving:   Corpdirect Agents, Inc., Registered Agent
                 515 East Park Avenue
                 Tallahassee, FL 32301

Each defendant is required to serve written defenses to the Complaint to Plaintiff's attorney,
whose address is:

                SMITH & VANTURE, LLP
                Brian W. Smith, Esquire
                1615 Forum Place, Suite 4-C
                West Palm Beach, FL  33401
                Tel:  (561) 684-6330
                Florida Bar No: 470510

within Twenty (20) days after service of this summons on that defendant, exclusive of the day of
service, and to file the original of the defenses with the clerk of this court either before service on
plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be
entered against that defendant for the relief demanded in the complaint or petition.

DATED on    **JUL 0 1 2010**

SHARON R. BOCK
Clerk & Comptroller
P.O. Box 4667
West Palm Beach, Flo
33402-4667

                    SHARON R. BOCK
                    As Clerk of the Court

              By:   **EDNA SMITH**
                     Deputy Clerk

## SUMMONS
### IMPORTANT

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint with the clerk of this court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the court. There are other legal requirements. You may want to call an attorney right away. If you do no know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the court you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's attorney" named below.

### IMPORTANTE

Usted ha sido demandado legalmente. Tiene 20 dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Una llamada telefonica no lo protegera. Si usted desea que el tribunal considere su defensa, debe presentar su repuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado inmediatamente. Si no conoce a un abodado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

### IMPORTANT

Des pursuites judiciares ont ete entreprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une response ecrite a la plainte ci-jointe aupres de ce tribunal. Un simple coup de telephone est insuffisant pour vous proteger. Vous estes obliges de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause. Si vous ne deposez pas votre response ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal. Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

## IN THE CIRCUIT COURT OF THE 15TH JUDICIAL CIRCUIT
## IN AND FOR PALM BEACH COUNTY, FLORIDA

**MARY PATRICIA RYAN**, as an
individual and on behalf of all others
similarly situated,

*Plaintiff,*

vs.

**MORSE OPERATIONS, INC.,** a
Florida corporation, d/b/a ED
MORSE DELRAY TOYOTA,

*Defendant.*

Civil No.: 50-2010-CA-005992XXXXMB
(AO)

**AMENDED CLASS ACTION COMPLAINT
FOR DAMAGES AND EQUITABLE RELIEF
*(PALM BEACH COUNTY CLASS ONLY)***

*JURY TRIAL REQUESTED*

COPY
RECEIVED FOR FILING

MAY 2 6 2010

SHARON R. BOCK
CLERK & COMPTROLLER
CIRCUIT CIVIL DIVISION

COMES NOW, the Plaintiff, MARY PATRICIA RYAN, as an individual and on behalf of all others similarly situated, by and through the undersigned counsel, and pursuant to all applicable *Florida Rules of Civil Procedure*, sues Defendant, MORSE OPERATIONS, INC., a Florida Corporation, doing business as ED MORSE DELRAY TOYOTA, and alleges as follows:

### I.      PARTIES

1.      MARY PATRICIA RYAN [hereinafter Plaintiff] is an individual consumer, who at all times material hereto, was and is a resident of the State of Florida, is over the age of eighteen (18), and is otherwise *sui juris*.

2.      MORSE OPERATIONS, INC., is a for profit corporation organized and existing under the laws of the State of Florida, located at 6363 N.W. 6th Way, Suite 400, Fort Lauderdale, Florida 33309, and conducting business in the State of Florida under the name ED MORSE DELRAY TOYOTA [hereinafter ED MORSE], located 2800 South Federal Highway, Delray Beach, Florida 33483.

3.     ED MORSE tests, markets, distributes, profits from, and sells vehicles in Palm Beach County, Florida, which are manufactured by Toyota Motor Corporation.

## II.     JURISDICTION AND VENUE

4.     This court has jurisdiction over this class action because it is an action brought on behalf of Palm Beach County purchasers from ED MORSE only.  ED MORSE is subject to personal jurisdiction in this County because it is where it conducts business.

5.     Venue is proper in Palm Beach County, Florida because a substantial part, if not all of the events or omissions giving rise to the claims alleged herein occurred in this County.

## III.     FACTUAL ALLEGATIONS

6.     ED MORSE is an agent of and distributor for Toyota Motor Corporation and/or Toyota Motor Sales, U.S.A., and distributes, markets, and sells Toyota, Lexus, and Scion automobiles.

7.     Toyota automobile owners have been reporting incidents of sudden unintended acceleration of vehicles since the 1990's.  Sean Kane, a safety researcher, reported he had found nineteen (19) deaths and three-hundred forty-one (341) injuries stemming from eight-hundred fifteen (815) separate crashes involving Toyotas and sudden acceleration. *See* "Toyota Accused of 'Not Being Frank' On Problem," attached hereto and incorporated herein as Exhibit "A."

8.     The National Highway Traffic Safety Administration ("NHTSA"), which helps investigate consumer complaints of automotive problems, was aware of claims of sudden unintended acceleration of Toyotas as early as December 2003 and began investigating those claims in 2004, when a major insurance company notified NHTSA of a spike in consumer complaints about sudden unintended acceleration. *See* "E-Mails Show NHTSA Investigating Toyota Issues in 2004", attached hereto and incorporated herein as Exhibit "B."

9.     To date, Toyota has recalled more than 2.3 million U.S. built cars. All Toyota vehicles recalled for the sudden acceleration problem are herein referred to as "Affected Vehicles". "Affected Vehicles" include, but may not be limited to:

    a)    Certain 2009-2010 RAV4;

    b)    Certain 2009-2010 Corolla;

    c)    2009-2010 Matrix;

    d)    2005-2010 Avalon;

    e)    Certain 2007-2010 Camry;

    f)    Certain 2010 Highlander;

    g)    2007-2010 Tundra;

    h)    2008-2010 Sequoia.

10.     Toyota was fined $16.4 million by the Department of Transportation, "the largest governmental penalty ever against an automaker, for concealing information related to its sticking pedal recall."[1]  Toyota publically announced on April 19, 2010, that it has agreed to pay the fine.[2]

11.     Upon information and belief, ED MORSE was aware, knew, or should have known of the defective condition of the acceleration system of Affected Vehicles, including Plaintiff's vehicle, when it sold them to consumers **between January 2004 and January 2010.**

12.     Upon information and belief, ED MORSE was aware of the defective condition of the acceleration system of the aforementioned vehicles, and/or the impending recall of said vehicles, when they sold them to consumers between January 2004 and January 2010.  ED

---

1.     Nick Bunkley & Micheline Maynard, *Toyota is Expected to Pay $16.4 Million Fine*, NY TIMES, April 19, 2010, at B3.
2.     *Id.*

MORSE had received complaints from their customers, describing experiences with the sudden unintended acceleration of their vehicles between 2004 and 2010.

13.    Plaintiff is an owner of a 2010 Toyota Rav4 (VIN #2T3YK4DV9AW005267), whose Toyota vehicle may no longer be safe to operate due to a potential sudden acceleration problem caused by a defective accelerator pedal, electronic system failure or both. Plaintiff's vehicle was and is an Affected Vehicle. *See* "Recall Campaign Information" sheet for Plaintiff's vehicle from the Toyota website, attached as "Exhibit C" hereto.

14.    Plaintiff purchased her vehicle from Ed Morse on January 21, 2010, the very day that the recall was announced.

15.    Plaintiff's vehicle was and is an Affected Vehicle of the Nationwide and heavily publicized epidemic with certain Toyotas. *See* "Recall Campaign Information" sheet for Plaintiff's vehicle," attached hereto and incorporated herein as Exhibit "C."

16.    At no time at or near the time of purchase, was Plaintiff informed about the potential sudden acceleration problem, and she was not informed that her vehicle was subject to a possible or existing recall, or that there was an impending recall of her vehicle. The Plaintiff's Toyota is defective, dangerously unsafe, and—if driven—will likely cause physical injury to the operator and the public at large.

17.    The Plaintiff and other class members were systematically denied the opportunity to make a knowing and intelligent waiver of their right to redressability in a court of law with the Constitutional right to jury trial. Plaintiff and other class members were fraudulently induced to enter into an arbitration agreement and risk being forced to submit a dispute to arbitration that they did not intend and agree to do. As a result, Plaintiff and other class members have been fraudulently induced in regards to the arbitration agreement itself.

## IV.   CLASS ALLEGATIONS

18.     Plaintiff repeats and restates the allegations contained in paragraphs six (6) through seventeen (17), *supra*, as if fully set forth herein verbatim.

19.     Plaintiff brings this action on behalf of herself and the Class comprised of all other Palm Beach County, Florida consumers who purchased their Affected Vehicles during the relevant time period—**January 2004 to January 2010.**

20.     ED MORSE'S practices and omissions were applied uniformly to all members of the Palm Beach County Class, so that the questions of law and fact are common to all members of the class. All putative Palm Beach County Class members were, and are, similarly affected by having purchased the Affected Vehicles for their intended and foreseeable purpose as promoted, marketed, advertised, packaged, and labeled by ED MORSE. The relief sought herein is for the benefit of Plaintiff and members of the putative class.

21.     Plaintiff alleges that the Palm Beach County Class is so numerous that joinder of all members is impracticable. Due to the nature of the trade and commerce involved, and based on the annual sales of the Affected Vehicles and the popularity of the Affected Vehicles, Plaintiff believes that the members of the Class against ED MORSE are geographically dispersed throughout Palm Beach County, Florida. While the exact number of Class members is unknown to Plaintiff at this time, Plaintiff believes that there are, at least, many thousands of members of the Class, thereby making joinder impossible.

22.     Questions of law and fact common to the Class exist and predominate over questions affecting only individual members, including, *inter alia*:

a.  Whether Plaintiff and the Class are entitled to rescission of the vehicle sales contract plus interest at the legal rate and costs, an Injunction, and other equitable relief;

b.  Whether ED MORSE fraudulently concealed facts and information regarding its testing, marketing, servicing, and sale of the Affected Vehicles;

c.  Whether ED MORSE fraudulently concealed facts and information regarding its testing, marketing, servicing, and sale of the Affected Vehicles; and

d.  Whether ED MORSE'S practices in connection with the promotion, marketing, advertising, labeling, testing, servicing, and sale of the Affected Vehicles unjustly enriched ED MORSE at the expense of, and to the detriment of, Plaintiff and other Class members.

e.  Whether ED MORSE misrepresented the safety of the automotive vehicles at issue;

23.   Plaintiff's claims are typical of the claims of the other members of the Class because the claims arise from the same course of conduct of ED MORSE. Further, the relief sought is common.

24.   Plaintiff will fairly and adequately represent and protect the interests of the members of the Class, and has retained counsel competent and experienced in class action and consumer protection litigation.

25.   Certification of this class action is appropriate because the questions of law or fact common to the respective Class members predominate over questions of law or fact affecting

only individual members.  This predominance makes class litigation superior to any other available methods for the fair and efficient adjudication of this controversy because joinder of all Class members is impracticable.  Absent a class action remedy, it would be highly unlikely that the representative Plaintiff or any other Class member would be able to protect their own interests because the cost of litigation through individual lawsuits might exceed expected recovery.

26.   ED MORSE has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief with respect to the Class as a whole.  Furthermore, given the large number of purchasers of the Affected Vehicles, allowing individual actions to proceed in lieu of a class action would run the risk of yielding inconsistent and conflicting adjudications.

27.   A class action is a fair and appropriate method for the adjudication of the controversy.  A class action will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous, separate actions by individual members of the Class.  Numerous, separate actions would impose heavy burdens upon the courts and ED MORSE, due to duplication of discovery, effort, and expense, and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class.

28.   A class action would achieve substantial economies of time, effort, and expense, and would assure uniformity of decision as to persons similarly situated without sacrificing procedural fairness.  Therefore, the benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, outweigh any difficulties that might be argued with regard to the management of this class action.

## V.   FIRST CAUSE OF ACTION — RESCISSION OF CONTRACT

29.    Plaintiff repeats and re-alleges the allegations contained in paragraphs one (1) through twenty-eight (28), *supra,* as if fully set forth herein verbatim.

30.    A purchaser in an action for rescission may recover the consideration paid plus interest at the legal rate, and the seller is thereupon entitled to the return of the item purchased.[3]

31.    The elements courts look to when deciding a claim for rescission are:

(1)    The character or relationship of the parties;

(2)    The making of the contract;

(3)    The existence of fraud, mutual mistake, false representation, impossibility of performance, or other ground for rescission or cancellation;

(4)    Plaintiff has notified the Defendant of his or her revocation;

(5)    If the plaintiff has received benefits from the contract, the plaintiff should further allege an offer to restore those benefits to the defendant, if restoration is possible; and

(6)    Plaintiff has no adequate remedy at law.[4]

32.    According to the Supreme Court of Florida, "The elements of rescission, in a nutshell, are misrepresentation of a material fact on which the buyer justifiably relied."[5]  Further,

---

3.    *E.F. Hutton & Co. v. Rousseff,* 537 So. 2d 978, 980 (Fla. 1989).
4.    FLA. STAT. § 672.608 (stating, "The buyer may revoke her or his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to her or him if she or he has accepted it: (a) On the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or (b) Without discovery of such nonconformity if her or his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances"); *Rousseff,* 537 So. 2d at 980; *Billian v. Mobil Corp.,* 710 So. 2d 984, 991 (Fla. 4th DCA 1998); *Saenz v. Rigau & Rigau, P.A.,* 549 So. 2d 682 (Fla. 2d DCA 1989); *Rousseff v. E.F. Hutton Co.,* 867 F.2d 1281, 1285 (11th Cir. 1989); *Sunny Corral Management, LLC v. Value Dining Inc.,* No. 08-60072-CIV, 2008 WL 5191466, *2 (S.D. Fla. Dec. 10, 2008); *Dawley v. NF Energy Saving Corp. of America,* No. 6:07-cv-872-Orl-DAB, 2008 WL 5210874, *10 (M.D. Fla. Dec. 11, 2008).
5.    *Rousseff,* 537 So. 2d at 981.

"The buyer need not show any causal connection between the misrepresentation and his [or her] damage, indeed, he [or she] need not even show that he [or she] has been damaged."[6]

33.   Rescission is an available remedy for fraud, accident, or mistake.[7]

34.   ED MORSE had a duty to disclose the truth about risks associated with its testing, marketing, servicing, or sale of Plaintiff's vehicle, as set forth in detail *supra*, but intentionally delayed and failed to do so.

35.   ED MORSE concealed facts relating to the defective accelerator pedal mechanism, electronic system failure, or both, on the Plaintiff's vehicle, when they knew, or had reason to know, the true and correct facts regarding the defectiveness of the Plaintiff's vehicle.

36.   ED MORSE took intentional, premeditated steps to prevent the Plaintiff and other consumer from discovering the defective nature of its Toyota vehicles through the marketing, promotion, testing, servicing, and sale of the automobile.

37.   The concealment of the true facts from Plaintiff was done with the intent to induce Plaintiff to purchase the subject vehicle, and Plaintiff did purchase the subject vehicle in justifiable reliance on the facts and information provided at the time of sale.

38.   The reliance by Plaintiff was reasonable and justified in that ED MORSE appeared to be, and represented to be, a reputable business. Plaintiff would not have purchased the subject vehicle had she known the truth about the vehicle: that it contained a defective accelerator pedal mechanism, electronic system failure or both.

39.   As a direct and proximate result of the fraud and deceit alleged, Plaintiff was induced to purchase the subject Affected Vehicle.

---

6.    *Id.*
7.    *See Royal v. Parado,* 462 So. 2d 849, 855 (Fla. 1st DCA 1985); *Hibiscus Assoc., Ltd., v. Bd. of Trustees,* 50 F.3d 908, 916 (11th Cir. 1995).

40.     ED MORSE knew, or should have known, through the testing, marketing, servicing, or sale of the subject vehicle as set forth in detail *supra*, that the Plaintiff's Toyota was defective, before it relied upon Toyota or its own initiatives in issuing a recall.  Further, ED MORSE intended that the customers rely on their representations that it was a reputable and reliable business, as well as ED MORSE'S suppression of the true facts about the subject vehicle at the time of purchase of the subject vehicle or at any time thereafter.

41.     Plaintiff, in purchasing and using the subject vehicle, did rely on ED MORSE'S representations and suppression of facts, all to their harm as alleged, *supra*.  In doing these things, ED MORSE is guilty and liable for fraud.

42.     As a proximate result of this fraudulent concealment by ED MORSE, Plaintiff has suffered damages to be proven at trial, which demand equitable relief.

43.     Plaintiff is entitled to rescission of the vehicle sales contract, based on ED MORSE'S fraud and her justifiable reliance thereupon, which resulted in damages that require equitable relief.

44.     Furthermore, Florida law mandates the equitable remedy of rescission here, based upon ED MORSE'S fraudulent concealment, because:

> (1)     The Plaintiff was a purchaser, and ED MORSE the seller, of an Affected Vehicle;
>
> (2)     A sales contract was entered into with Plaintiff offering monetary consideration and ED MORSE having the detriment of passing title to the vehicle to the Plaintiff;
>
> (3)     ED MORSE committed fraud, misrepresentation, or both;

(4)    Plaintiff has notified ED MORSE of the defective condition of her Affected Vehicle;

(5)    The Plaintiff is able to restore ED MORSE with the Affected Vehicle sold in exchange for the purchase price plus interest at the legal rate; and

(6)    Plaintiff has no adequate remedy at law to put her back in a position prior to the execution of the Affected Vehicle sales contract.

## VI.   SECOND CAUSE OF ACTION — TEMPORARY INJUNCTION

45.    Plaintiff repeats and re-alleges the allegations contained in paragraphs one (1) through twenty-eight (28), *supra*, as if fully set forth herein verbatim.

46.    The Plaintiff and members of the class are entitled to a Temporary Injunction—waiving the posting of bond—immediately compelling ED MORSE to provide them with an interim temporary/rental vehicle, while storing their vehicles until it can be determined to be safe to operate.

47.    According to Rule 1.610(c), *Florida Rules of Civil Procedure*, "Every injunction shall specify the reasons for entry, shall describe in reasonable detail the act or acts restrained without reference to a pleading or another document, and shall be binding on the parties to the action, their officers, agents, servants, employees, and attorneys and on those persons in active concert or participation with them who receive actual notice of the injunction."[8]

48.    The Supreme Court of Florida has held a Temporary Injunction may be granted if:

(1)    Plaintiff will suffer irreparable harm;

(2)    Plaintiff has no adequate remedy at law;

(3)    Plaintiff has a substantial likelihood of success on the merits; and

---

8.    FLA. R. CIV. P. 1.610(c).

(4)     A temporary injunction will serve the public interest.[9]

49.     In addition to a Plaintiff's satisfaction of the prima facie elements for a temporary injunction, Florida courts also consider the following in determining whether to grant injunctive relief:

"(a)     the nature of the interest to be protected;

(b)     the relative adequacy to the plaintiff of injunction and of other remedies;

(c)     any unreasonable delay by the plaintiff in bringing suit,

(d)     any related misconduct on the part of the plaintiff,

(e)     the relative hardship likely to result to defendant if an injunction is granted and to plaintiff if it is denied,

(f)     the interests of third persons and of the public, and

(g)     the practicability of framing and enforcing the order or judgment."[10]

50.     The Plaintiff here requires a Temporary Injunction *solely to avoid and prevent physical injury*, compelling ED MORSE to provide an interim vehicle for her use while this suit is pending.     Plaintiff's Toyota is defective, dangerously unsafe, and—if driven—will undoubtedly cause physical injury to the operator and the public at large.

51.     Plaintiff, and the public at large, will suffer irreparable harm if the present injunction is not granted, because an imminent automobile collision is always irreversible. The Plaintiff has no adequate remedy at law to compel Defendant to act in accordance with the

---

9.     *Provident Mgmt. Corp. v. City of Treasure Island*, 796 So. 2d 481, 485, n. 9 (Fla. 2001) (citing *Weinstein v. Aisenberg*, 758 So. 2d 705, 706 (Fla. 4th DCA), *rev. dismissed*, 767 So. 2d 453 (Fla. 2000); *Liberty Fin. Mortg. Corp. v. Clampitt*, 667 So. 2d 880, 881 (Fla. 2d DCA 1996); *see also D'Agostino v. Lethal Performance, Inc.*, 958 So. 2d 605, 606 (Fla. 4th DCA 2007); *Hadi v. Liberty Behavioral Health Corp.*, 927 So. 2d 34, 38 (Fla. 1st DCA 2006); *Hasley v. Harrell*, 971 So. 2d 149, 152 (Fla. 2d DCA 2007); *Angelino v. Santa Barbara Enterprises, LLC*, 2 So.3d 1100, 1100 (Fla. 3d DCA 2009); *Dispoto v. Marion County*, 969 So. 2d 423, 425 (Fla. 5th DCA 2007).
10.     *Davis v. Joyner*, 409 So. 2d 1193, 1195 (Fla. 4th DCA 1982) (*citing* RESTATEMENT (SECOND) OF TORTS § 936 (1979)).

requisite relief. Only an Injunction will prevent physical injury and compel ED MORSE to provide the Plaintiff with an interim vehicle to keep her dangerous Toyota off the road.

52.     The Plaintiff has a substantial likelihood of success on the merits in this case because there are numerous other instances of sudden acceleration in vehicles similar to Plaintiff's vehicle.

53.     The Temporary Injunction will serve the public interest by keeping the Plaintiff's dangerous, defective vehicle off the road, thereby preventing additional injuries. In addition, the Injunction will allow the Plaintiff to have use of a temporary vehicle while this action is pending so she is not deprived of adequate transportation.

54.     Furthermore, Florida law mandates a Temporary Injunction in this case because:

    (a)     The nature of the interest to be protected is a vital one—public safety and prevention of physical injury;

    (b)     The Injunction will adequately provide the Plaintiff with the appropriate remedy of keeping her defective Toyota off the road;

    (c)     There has been no unreasonable delay by the Plaintiff in bringing suit;

    (d)     There has been no misconduct on the part of the Plaintiff;

    (e)     There will be minimal hardship to ED MORSE if the Injunction is granted because it will actually mitigate their liability, while protecting the Plaintiff and public at large. Conversely, if the Injunction is not granted, the Plaintiff will almost certainly suffer hardship because of the imminent threat of physical injury present if she is forced to drive her defective Toyota;

(f)     The interests of the public at large will be protected by the granting of the Injunction because it will prevent physical injury; and

(g)     It is extremely practical to frame and enforce the Injunction because of its simplistic nature—ED MORSE merely needs to provide the Plaintiff with a safe temporary/rental vehicle not subject to the recall and store the Plaintiff's Affected Vehicle while this suit is pending.

55.     Ordinarily a bond is required to secure a temporary injunction; however, since the ratification of the 1984 amendments to the *Florida Rules of Civil Procedure*,[11] the bond requirement must be waived if the injunction is sought solely to prevent physical injury.[12]

56.     Specifically, "a bond is required for all temporary injunctions *except those injunctions entered to prevent physical injury*."[13]

57.     Pursuant to Rule 1.610(b), *Florida Rules of Civil Procedure*, "No bond shall be required for issuance of a temporary injunction issued solely to prevent physical injury or abuse of a natural person."[14]

58.     Florida law mandates waiver of the bond requirement to obtain the Temporary Injunction in this case because it is being *solely* requested to *prevent physical injury* to the Plaintiff and the public at large. Plaintiff is not requesting this Injunction for any other purpose but to prevent physical injury to herself and the public at large. The threat of physical harm to the Plaintiff and the public at large is insurmountable if the Temporary Injunction is not granted.

---

11.     *Amend. to Fla. R. of Civ. P.*, 773 So. 2d 1098, 1121 (Fla. 2000).
12.     *Provident Mgmt. Corp.*, 796 So. 2d at 483.
13.     *Cord v. Cord*, 750 So. 2d 757, 758 (Fla. Dist. Ct. App. 2d Dist. 2000) (noting the bond exception for prevention of physical injury is analogous in family law and civil proceedings). (Emphasis added).
14.     *Id.* at 1.610(b). (Emphasis added).

### VII.   THIRD CAUSE OF ACTION — BREACH OF EXPRESS WARRANTY

59.    Plaintiff repeats and re-alleges paragraphs one (1) through twenty-eight (28), as if fully set forth herein verbatim.

60.    ED MORSE provided Plaintiff and other members of the Class with written express warranties including, but not limited to, that the Affected Vehicles were completely safe to operate.

61.    ED MORSE breached these express warranties, which resulted in damages to Plaintiff and other members of the Class, who overpaid for the Affected Vehicles, as the Affected Vehicles were not safe as they may contain a defective accelerator pedal mechanism, electronic system failure or both, causing sudden acceleration, potentially resulting in death, and as such, the Affected Vehicles were not safe to operate.

62.    As a proximate result of the breach of warranties by ED MORSE, Plaintiff and Class members have suffered damages in an amount to be determined at trial in that, among other things, they purchased and paid for a product that did not conform to what was promised as promoted, marketed, advertised, packaged and labeled by ED MORSE, and they were deprived of the benefit of their bargain and spent money on a product that did not have any value or had less value than warranted or a product they would not have purchased and used had they known the true facts about it. Plaintiff and other members of the class are further harmed in having to spend money on obtaining other transportation while the Affected Vehicles are being fixed. Additionally, or in the alternative, Plaintiff and other members of the class suffered actual damages, including a diminution of value of the subject vehicles (the difference in market value of the product in the condition in which it was delivered, and its market value in condition in which it should have been delivered according to contract of parties).

## VIII.   FOURTH CAUSE OF ACTION — BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

63.     Plaintiff repeats and re-alleges paragraphs one (1) through twenty-eight (28), as if fully set forth herein verbatim.

64.     Plaintiff and other Class members purchased ED MORSE'S Affected Vehicles, which were promoted, marketed, advertised, packaged, and labeled as being safe to operate. Pursuant to these sales, ED MORSE impliedly warranted that the Affected Vehicles would be merchantable, including that the Affected Vehicles would be fit for the ordinary purposes for which such goods are used and conform to the promises or affirmations of fact made in the Affected Vehicle's promotions, marketing, advertising, packaging and labels.   In doing so, Plaintiff and other Class members relied on ED MORSE'S representations that the Affected Vehicles were safe to operate, and at or about that time, ED MORSE sold to Plaintiff and other Class members the Affected Vehicles.   By its representations regarding the reputable nature of its company and related entities, and by its promotion, marketing, advertising, packaging and labeling of the Affected Vehicles, ED MORSE warranted that the Affected Vehicles were safe to operate.   Plaintiff and Class members bought the Affected Vehicles from ED MORSE, relying on ED MORSE'S representations that the Affected Vehicles were safe to operate; however, these vehicles may have contained a defective accelerator pedal mechanism, electronic system failure, or both, causing sudden acceleration, which could potentially result in death.

65.     ED MORSE breached the warranty implied at the time of sale in that Plaintiff and Class members did not receive a vehicle which was safe to operate and thus, the goods were not merchantable as fit for the ordinary purposes for which such goods are used or as promoted, marketed, advertised, packaged, labeled or sold.

66.     As a proximate result of this breach of warranty by ED MORSE, Plaintiff and Class members have suffered damages in an amount to be determined at trial in that, among other things, they purchased and paid for a product that did not conform to what was promised as promoted, marketed, advertised, packaged, and labeled by ED MORSE, and they were deprived of the benefit of their bargain and spent money on a product that did not have any value or had less value than warranted or a product they would not have purchased and used had they known the true facts about it. Plaintiff and other members of the class are further harmed in having to spend money on attaining other transportation while the Affected Vehicles are being fixed. Additionally, or in the alternative, Plaintiff and other members of the class suffered actual damages, including a diminution of value of the subject vehicles (the difference in market value of the product in the condition in which it was delivered, and its market value in condition in which it should have been delivered according to contract of parties).

## IX.     FIFTH CAUSE OF ACTION — BREACH OF IMPLIED WARRANTY OF FITNESS FOR PARTICULAR PURPOSE

67.     Plaintiff repeats and re-alleges paragraphs one (1) through twenty-eight (28), as if fully set forth herein verbatim.

68.     Plaintiff and other Class members purchased ED MORSE'S Affected Vehicles, which were promoted, marketed, advertised, packaged, and labeled as being safe to operate. Pursuant to these sales and by its representations regarding the reputable nature of its company and related entities, ED MORSE impliedly warranted by its promotion, marketing, advertising, packaging, and labeling of the Affected Vehicles that they were safe to operate. Plaintiff and Class members bought the Affected Vehicles from ED MORSE, relying on ED MORSE'S skill and judgment in furnishing suitable goods as well as ED MORSE'S representations that the Affected Vehicles were safe to operate. However, ED MORSE'S Affected Vehicles were not

safe to operate as they may have contained a defective accelerator pedal mechanism, electronic system failure, or both, causing sudden acceleration, which could potentially result in death.

69.     ED MORSE breached the warranty implied at the time of sale, in that Plaintiff and Class members did not receive products that were safe to operate as they possibly contained a defective accelerator pedal mechanism, electronic system failure, or both, causing sudden acceleration, which could potentially result in death, and thus the goods were not fit for the purpose as promoted, marketed, advertised, packaged, labeled, or sold.

70.     As a proximate result of this breach of warranty by ED MORSE, Plaintiff and Class members have suffered damages in an amount to be determined at trial in that, among other things, they purchased and paid for a vehicle that did not conform to what was promised as promoted, marketed, advertised, packaged, and labeled by ED MORSE, and they were deprived of the benefit of their bargain and spent money on a product that did not have any value or had less value than warranted or a product they would not have purchased and used had they known the true facts about it. Plaintiff and other members of the class are further harmed in having to spend money on attaining other transportation while the Affected Vehicles are being fixed. Additionally, or in the alternative, Plaintiff and other members of the class suffered actual damages, including a diminution of value of the subject vehicles (the difference in market value of the product in the condition in which it was delivered, and its market value in condition in which it should have been delivered according to contract of parties).

## X.     SIXTH CAUSE OF ACTION — FRAUDULENT CONCEALMENT

71.     Plaintiff repeats and re-alleges paragraphs one (1) through twenty-eight (28), as if fully set forth herein verbatim.

72.    ED MORSE had a duty to disclose the truth about risks associated with the design, testing, manufacture, assembly, and development of the Affected Vehicles as set forth in detail *supra*, but delayed and failed to do so.

73.    ED MORSE concealed these facts relating to the defective accelerator pedal mechanism, electronic system failure, or both, of the Affected Vehicles, when they knew, or had reason to know, the true and correct facts regarding the defectiveness of the Affected Vehicles, and that ED MORSE took steps to prevent these facts from becoming known to the general public in the marketing, promotion, servicing, testing, and sale of the Product.

74.    The concealment of the true facts from Plaintiff and other members of the Class was done with the intent to induce Plaintiff and Class members to purchase the Affected Vehicles.

75.    The reliance by Plaintiff and Class members was reasonable and justified in that ED MORSE appeared to be, and represented itself to be, a reputable businesses. Plaintiff and Class members would not have purchased the Affected Vehicles had they known the true facts about the Affected Vehicles—that they may result in potential death.

76.    As a direct and proximate result of the fraud and deceit alleged, Plaintiff and Class members were induced to purchase the Affected Vehicles, who then used it for its intended and foreseeable purpose, and have suffered damages in an amount to be determined at trial

77.    ED MORSE knew, or should have known, that the design, testing, manufacture, assembly, and development of the Affected Vehicles as set forth in detail *supra*, was defective, before a recall was issued, and that ED MORSE intended that the customers should rely on their representations that it was a reputable and reliable business, as well as ED MORSE'S suppression of the true facts about the Affected Vehicles, in buying the Affected Vehicles.

84.    "No party may be forced to submit a dispute to arbitration that the party did not intend and agree to arbitrate."[15]

85.    When an arbitration agreement itself has been fraudulently induced, the requirement to submit issues arising out of the transaction to arbitration may should be waived.[16]

86.    The Plaintiff and other class members were systematically denied the opportunity to make a knowing and intelligent waiver of their right to redressability in a court of law with the Constitutional right to jury trial.

87.    Plaintiff and other class members were not afforded the opportunity to make an informed decision of whether to waive their right to a jury trial in regards to claims arising out of their vehicle purchase agreement.

88.    Plaintiff and other class members justifiably relied upon being able to settle their disputes in court; however, this reliance was to their detriment because of the arbitration provision in the contract preventing them from doing so.

89.    Something of this importance should have been discussed with the Plaintiff and other class members. Since it was not, Plaintiff and other class members were fraudulently induced to enter into the arbitration agreement based on Defendant's concealment, and therefore are at risk of being forced to submit a dispute to arbitration that they did not intend and agree to do.

90.    As a result, Plaintiff and other class members have been fraudulently induced in regards to the arbitration agreement itself.

---

15.    *General Impact Glass & Window Corp., v. Rollac Shutter of Texaas, Inc.,* 8 So. 3d 1165, 1167 (Fla. 3d DCA 2009).
16.    *See Passerrello v. Robert L. Lipton, Inc.,* 690 So. 2d 610, 611 (Fla. 4th DCA 1997); *see also Maguire v. King,* 917 So. 2d 263, 267 (Fla. 5th DCA 2005).

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for judgment as follows:

    i.    Certification of the Palm Beach County Class, certifying Plaintiff as representative of the Class, and designating her counsel as counsel for the Class, dispensing with the fraudulently induced arbitration agreement;

    ii.    Rescission of the Affected Vehicle sales contract, plus interest at the legal rate;

    iii.    Order ED MORSE to allow consumers, such as the Plaintiff, who own a Toyota vehicle that is subject to any such recall, and who feel that their Toyota is still unsafe to drive—due to the recalls to date—to bring their vehicle in to the dealership to obtain a replacement vehicle that is not subject to the recalls;

    iv.    Order ED MORSE, to store the consumer's vehicle, including Plaintiff's, until it is determined that the consumer's vehicle is safe to drive. Such determination should be made by a Special Master, appointed by the Court, who has such an expertise in automotive safety that he or she can make a determination or advise the court of their opinion regarding the safety of the Affected Vehicles;

    v.    Waive the bond requirement for the requested relief;

    vi.    An award of compensatory damages, the amount of which is to be determined at trial;

   vii.      An award of interest at the legal rate on the foregoing sums;

   viii.     For costs of suit incurred; and

   ix.      For all other relief this Court deems just, appropriate, and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: May 26, 2010

Respectfully submitted,

Brian W. Smith, Esq.
Florida Bar No. 0470510
bws@smithvanture.com
Smith & Vanture, LLP
1615 Forum Place, Suite 4C
West Palm Beach, Florida 33401
(561) 684-6330 (ofc) (561) 688-0630 (fax)
**(Trial Counsel for the Plaintiff)**

Howard Rubinstein, Esq.
Florida Bar No. 0104108
HowardR@pdq.net
Law Offices of Howard Rubinstein
P.O. Box 4839
Aspen, Colorado  81611
(832) 715-2788 (ofc)
**(Co-counsel for the Plaintiff)**

Andrew McElroy, Esq.
Florida Bar No.: 0798460
tmcelroy@wdklaw.com
Whatley, Drake, & Kallas, LLC
2001 Park Place North, Suite 1000
Birmingham, Alabama 35203
Tel. (205) 328-9576
Fax. (205) 328-9669
**(Co-counsel for the Plaintiff)**

IN THE CIRCUIT COURT FOR THE 15ᵗʰ JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA

MARY PATRICIA RYAN, as an
individual and on behalf of all others
similarly situated,

        Plaintiff,

vs.

MORSE OPERATIONS, INC., a
Florida corporation, d/b/a ED MORSE
DELRAY TOYOTA,

        Defendant.
_____/

CASE NO.: 50-2010-CA-006855XXXXMB (AO)
CIVIL DIVISION

## DEFENDANT'S MOTION TO DISMISS

Pursuant to Florida Rules of Civil Procedure 1.120 and 1.140(b)(1), (6) and (7),

Defendant Morse Operations, Inc. hereby moves this Court to dismiss Plaintiff's Amended Class

Action Complaint on grounds that Plaintiff (i) lacks standing to assert the claims in her

Complaint, (ii) fails to state a cause of action, and (iii) fails to plead her claims for fraudulent

concealment and fraudulent inducement with sufficient particularity, stating as follows:

**A.**      **Plaintiff's Complaint Should Be Dismissed Because She Failed to Attach to the Complaint a Copy of the Contract that Forms the Basis For Her Claims.**

Pursuant to Fla. R. Civ. P. 1.130, contracts "upon which action may be brought or

defense made" or copies thereof "shall be incorporated in or attached to the pleading." *Safeco*

*Ins. Co. of Am. v. Ware*, 401 So. 2d 1129, 1130 (Fla. 4th DCA 1981).  When a party fails to

attach the required contract, the pleading should be dismissed. *Id.*  In the present case, Plaintiff

has asserted claims for "Rescission of Contract" and "Breach of Warranty" against Defendant.

Despite having executed a "Vehicle Buyer's Order" that contains all of the terms and conditions

of the contract between the parties, Plaintiff failed to attach the contract to her Complaint. Accordingly, Plaintiff's Complaint should be dismissed.[1]

## B.    Plaintiff Lacks Standing Because Her Vehicle Has Not Malfunctioned.

"To have standing, a party must establish an injury that may be redressed by the requested relief." *Westport Recovery Corp. v. Midas*, 954 So. 2d 750, 752 (Fla. 4th DCA 2007). In this case, Plaintiff has not suffered an actual injury because her vehicle has not experienced any incidents of unintended acceleration. Any injury to Plaintiff is doubtful, speculative, and contingent. Plaintiff does not allege that a defect has manifested itself in her or any other class member's vehicle. Plaintiff alleges only that her vehicle contains an unspecified and un-manifested defect that *may* cause her vehicle to malfunction at some point in the future. Such a speculative allegation of future injury is insufficient to create standing. Because she lacks standing to bring any of the claims asserted, Plaintiff's Complaint should be dismissed.

Indeed, courts around the country have held that plaintiffs lack standing to bring a claim when their vehicles merely had a propensity to malfunction. *See Wallis v. Ford Motor Corp.*, 208 S.W.3d 153 (Ark. 2005); *Tietsworth v. Harley-Davidson, Inc.*, 270 Wis.2d 146, 677 N.W.2d 233 (2004); *Gen. Motors Corp. v. Brewer*, 966 S.W.2d 56 (Tex. 1998); *Coker v. DaimlerChrysler Corp.*, 172 N.C. App. 386, 617 S.E.2d 306 (2005); *Frank v. DaimlerChrysler Corp.*, 741 N.Y.S. 2d 9, 17 (1st Dept. 2002); *Dalton v. Ford Motor Co.*, 2002 WL 338081 (Del. Super. Ct. 2002); *American Suzuki Motor Corp. v. Superior Court*, 37 Cal.App.4th 1291 (1995); *Briehl v. General Motors Corp.*, 172 F.3d 623, 627-29 (8th Cir.1999); *Yost v. General Motors*

---

[1] Once Plaintiff cures this defect and attaches the contract to her pleading, the Court will see that her revocation of acceptance and breach of express and implied warranties claims should be dismissed because Defendant disclaimed all warranties with respect to Plaintiff's vehicle. Under Florida law, claims for revocation of acceptance and breach of warranties fail as a matter of law when a car dealership disclaims all warranties. *See Giallo v. New Piper Aircraft, Inc.*, 855 So. 2d 1273, 1275-76 (Fla. 4th DCA 2003); *Frank Griffin Volkswagen, Inc. v. Smith*, 610 So. 2d 597, 603 (Fla. 3d DCA 1992).

- 2 -

*Corp.*, 651 F. Supp. 656, 657-58 (D.N.J.1986); *Feinstein v. Firestone Tire and Rubber Co.*, 535 F. Supp. 595, 603 (S.D.N.Y.1982).

**C.**    **Plaintiff's Claim For Revocation of Acceptance[2] Should Be Dismissed Because Plaintiff Fails to Plead the Required Elements.**

To state a cause of action for revocation of acceptance Plaintiff must plead all of the required elements for the claim. *See Dunham-Bush, Inc. v. Thermo-Air Service, Inc.*, 351 So. 2d 351, 353 (Fla. 4th DCA 1977). Section 672.608(2), Florida Statutes, provides some of the essential elements of a revocation of acceptance claim:

> (2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

Plaintiff fails to allege that she notified Defendant of her revocation of acceptance within a reasonable time or before any substantial change of goods has occurred. Accordingly, her Complaint must be dismissed. *See Dunham-Bush*, 351 So. 2d at 353.

**D.**    **Plaintiff's Temporary Injunction Claim Should Be Dismissed Because Plaintiff Has Not Suffered Irreparable Injury, an Adequate Remedy at Law Exists, and Plaintiff is Not Seeking to Preserve the Status Quo.**

Plaintiff fails to state a cause of action for injunctive relief because she has not suffered an "irreparable injury," a prerequisite to the issuance of a temporary injunction. *See Biscayne Park, LLC v. Wal-Mart Stores East, LP*, 34 So. 3d 24, 26 (Fla. 3d DCA 2010). "Irreparable injury will never be found where the injury complained of is 'doubtful, eventual or speculative.'" *Jacksonville Elec. Auth. v. Beemik Builders & Constructors, Inc.*, 487 So. 2d 372, 373 (Fla. 1st DCA 1986); *Sanstrom v. Garren*, 187 So. 2d 366 (Fla. 3d DCA 1966); *First Nat'l Bank in St. Petersburg v. Ferris*, 156 So. 2d 421 (Fla. 2d DCA 1963). Here, any injury to Plaintiff is

---

[2] In Florida, when a party seeks to rescind a contract for the sale of goods, the claim is technically one for "revocation of acceptance" that is governed by the Florida Uniform Commercial Code. *Cent. Fla. Antenna Serv., Inc. v. Crabtree*, 503 So. 2d 1351, 1353 (Fla. 5th DCA 1987).

doubtful, speculative, and contingent. Plaintiff concedes that she has not been injured and alleges only that her "Toyota is defective, dangerously unsafe and—if driven—will *likely* cause physical injury to the operator and the public at large." Compl. ¶ 16 (emphasis added).

Moreover, if Plaintiff prevailed on her claims, there is an adequate remedy at law that would remedy Plaintiff's alleged injuries. Indeed, Plaintiff is seeking "actual damages, including diminution of value of the subject vehicles." Compl. ¶¶ 62, 66, 70, 79. The law is clear -- "[i]rreparable injury will not be found if money damages are available as a remedy." *Jacksonville Elec.*, 487 So. 2d at 373. Because Plaintiff's alleged injuries may be remedied by money damages, her claim for injunctive relief should be dismissed.

Plaintiff's claim for injunctive relief should also be dismissed because it does not seek to preserve the status quo for future proceedings, which is the very purpose of a temporary injunction. *Camji v. Helmsley*, 602 So. 2d 617, 618 (Fla. 3d DCA 1992). Rather than seeking to preserve the status quo, Plaintiff simply seeks to punish Defendant monetarily by requiring it to provide rental cars to the entire class.

E.      **Plaintiff's Request for Injunctive Relief Amounts to a Court-Ordered Recall and is Preempted by the National Traffic and Motor Vehicle Safety Act.**

Plaintiff's request for an order requiring Defendant to provide each putative class member with "an interim temporary/rental vehicle, while storing their vehicle until it can be determined to be safe to operate" (Compl. ¶ 46), should be dismissed or otherwise stricken by this Court because it amounts to a request for a recall of several models of Toyota vehicles and is preempted by the National Traffic and Safety Act of 1966, 49 U.S.C. §§ 30101 *et seq.* Several courts addressing similar requests have held that the claims are preempted by the Safety Act. *See  Lilly v. Ford Motor Co.*, No. 00C7372, 2002 WL 84603, at *5 (N.D. Ill. Jan. 22, 2002); *In re Bridgestone/Firestone Inc. Tires Prods. Liab. Litig.*, 153 F. Supp. 2d 935, 944-45 (S.D. Ind.

- 4 -

2001); *Namovicz v. Cooper Tire & Rubber Co.*, 225 F. Supp. 2d 582, 584 (D. Md. 2001); *Coker v. DaimlerChrysler Corp.*, No. 01CVS1264, 2004 WL 32676 (N.C. Super. Jan. 5, 2004) *aff'd*, 172 N.C. App. 386, 617 S.E.2d 306 (2005).

F.     **Plaintiff's Breach of Express and Implied Warranties Claims Fail as a Matter of Law.**

Plaintiff fails to state any cause of action for breach of express and implied warranties because: (i) Plaintiff failed to provide adequate notice of the alleged breaches, and (ii) Defendant expressly disclaimed all warranties.

To prevail on a breach of express or implied warranty claim, Plaintiff must show that she notified Defendant of the alleged breach "within a reasonable time after [s]he discovers or should have discovered any breach." Fla. Stat. § 672.607(3). This notice requirement is a valid precondition of imposing liability on a seller of goods. *Gen. Matters, Inc. v. Paramount Canning Co.*, 382 So. 2d 1262, 64 (Fla. 2d DCA 1980), citing *Dunham-Bush, Inc. v. Thermo-Air Service, Inc.*, 351 So. 2d 351 (Fla. 4th DCA 1977). Failure to include such an allegation in a complaint results in its dismissal. *Dunham-Bush*, 351 So. 2d at 353. Because Plaintiff fails to allege that she notified Defendant of any alleged breach of warranties within a reasonable time, her Complaint must be dismissed. *Id.*

Plaintiff's claim for breach of implied warranty of fitness for a particular purpose fails for an additional reason. Plaintiff does not (and cannot) allege that she purchased her vehicle for a "particular purpose," but rather attempts to assert the claim by alleging the ordinary purpose for vehicles. Specifically, Plaintiff merely alleges that her vehicle was not safe to operate. Compl. ¶ 69. Plaintiff cannot state a cause of action for breach of the implied warranty of fitness for a particular purpose based on the ordinary purpose of vehicles.

- 5 -

**G.** **Plaintiff's Fraudulent Concealment and Fraudulent Inducement Claims Should Be Dismissed Because Plaintiff Has Not Plead These Claims With the Requisite Level of Specificity and Defendant Did Not Have a Duty to Disclose.**

Plaintiff fails to properly state causes of action for fraudulent concealment or fraudulent inducement. In a complaint, "[t]he factual basis for a claim of fraud must be pled with particularity and must specifically identify misrepresentations or omissions of fact, as well as time, place or manner in which they were made." *Cedars Health Care Grp., Ltd. v. Mehta*, 16 So. 3d 914, 917 (Fla. 3d DCA 2009), citing *Blue Supply Corp. v. Novos Electro Mech. Inc.*, 990 So. 2d 1157, 1159-60 (Fla. 3d DCA 2008). Here, Plaintiff does not plead her fraudulent concealment and fraudulent inducement claims with the required specificity. Specifically, Plaintiff fails to identify the who, what, where, and when necessary to sustain a fraud claim. Accordingly, Plaintiff's fraudulent inducement and fraudulent concealment claims should be dismissed. *See, e.g., Midway Shopping Mall, Inc. v. Airtech Air Conditioning, Inc.*, 253 So. 2d 900, 902 (Fla. 3d DCA 1971).

Plaintiff's fraudulent concealment claims should also be dismissed because Plaintiff failed to establish that Defendant had a duty to disclose. In Florida, "[a] defendant's knowing concealment of a material fact may only support an action for fraud where there is a duty to disclose." *Transpetrol, Ltd. v. Radulovic*, 764 So. 2d 878, 879 (Fla. 4th DCA 2000). Such a duty "will not lie where the parties are dealing at arms length because there is no duty imposed on either party to protect or benefit the other." *Am. Honda Motor Co., Inc. v. Motorcycle Info. Network*, 390 F. Supp. 2d 1170, 1179 (M.D. Fla. 2005), citing *Doe v. Evans*, 814 So. 2d 370, 374 (Fla. 2002); *Maxwell v. First United Bank*, 782 So. 2d 931, 934 (Fla. 4th DCA 2001). Here, Plaintiff's fraudulent concealment claim is premised on an arms-length business relationship. Moreover, federal law expressly places the duty to inform consumers of a recall or known safety

defects on the manufacturer, not the dealer. *See* 49 U.S.C. §§ 30119 and 30321. Because Defendant did not have a duty to disclose, Plaintiff's fraudulent concealment claim should be dismissed. *Am. Honda*, 390 F. Supp. 2d at 1180; *Transpetrol*, 764 So. 2d at 880.

**H.      Plaintiff's Unjust Enrichment Claim Should Be Dismissed Because the Parties' Conduct is Governed by an Express Contract.**

Plaintiff's claim for unjust enrichment fails because Defendant's duties to Plaintiff are governed by the terms of the contract between the parties. Compl. ¶ 60. "[W]here there is an express contract between the parties, claims arising out of that contractual relationship will not support a claim for unjust enrichment. *Moynet v. Courtois*, 8 So. 3d 377, 379 (Fla. 3d DCA 2009), citing *Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So. 2d 696, 697 (Fla. 1st DCA 2008); *Harding Realty, Inc. v. Turnberry Towers Corp.*, 436 So. 2d 983 (Fla. 3d DCA 1983). Because there is a valid, express contract between the parties, Plaintiff may not resort to the quasi-contractual remedy of unjust enrichment.

**I.      Plaintiff's Complaint Should Be Dismissed for Failure to Join a Necessary Party.**

Toyota Motor Sales, U.S.A., Inc. is the distributor and warrantor of new Toyota vehicles to Toyota-authorized dealers and would be responsible for implementing the relief sought by Plaintiff. For example, TMS is the entity that issued the only express warranty applicable to Plaintiff's claims. TMS, therefore, is a necessary party to this action. Because TMS is not a party, Plaintiff's claims should be dismissed. *See Engel Mortg. Co., Inc. v. Dowd*, 355 So. 2d 1210, 1213 (Fla. 1st DCA 1977).

**Conclusion**

For the reasons set forth above, Plaintiff's Complaint should be dismissed.

Respectfully submitted,

LEWIS TEIN, P.L.
*Counsel for Defendant Morse Operations, Inc.,*
*d/b/a/ Ed Morse Delray Toyota*
The Offices at Coco Walk
3059 Grand Avenue
Suite 340
Coconut Grove, Florida 33133
Telephone: (305) 442-1101
Facsimile: (305) 442-6744

By: _____  by KAM
        MICHAEL R. TEIN          FL Bar 071162
        Fla. Bar No.: 993522
        tein@lewistein.com

- 8 -

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been

served by facsimile and U.S. mail this 26th day of July, 2010, to:

Brian W. Smith
Smith & Vanture, LLP
1615 Forum Place, Suite 4C
West Palm Beach, Florida 33401

Howard Rubinstein
Law Offices of Howard Rubinstein
P.O. Box 4839
Aspen, Colorado 81611

Andrew McElroy
Whatley, Drake & Kallas, LLC
2001 Park Place North, Suite 1000
Birmingham, Alabama 35203

Michael R. Tein  by KAM

FL Bar No 0711152